UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | § | |
|---|---|---|
| IN RE *EX PARTE* PETITION OF THALES | § | |
| DIS AIS DEUTSCHLAND GmbH FOR AN | § | |
| ORDER PERMITTING DISCOVERY FOR | § | NO: |
| USE IN FOREIGN PROCEEDINGS | § | |
| UNDER 28 U.S.C. § 1782 | § | |
| | § | |

**PETITIONER THALES DIS AIS
DEUTSCHLAND GMBH'S MEMORANDUM OF LAW IN
SUPPORT OF *EX PARTE* PETITION FOR AN ORDER PERMITTING
<u>DISCOVERY FOR USE IN FOREIGN PROCEEDINGS UNDER 28 U.S.C. § 1782</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

I.    FACTUAL BACKGROUND ......................................................................... 3

      A.    The Parties ........................................................................................ 3

      B.    Avanci and Nokia Refuse to Offer a FRAND License to Thales. .......................... 5

      C.    Thales Has Brought an Action in Munich Regional Court for Violations of
            European Antitrust Law. ...................................................................... 8

II.   ARGUMENT .......................................................................................... 9

      A.    Legal Framework .............................................................................. 9

      B.    Thales's Petition Satisfies the Statutory Requirements of Section 1782. ............. 11

      C.    The Discretionary Factors Favor Granting the Petition. ........................................ 11

            1.    The First Discretionary Factor Favors Granting the Petition Because the
                  Discovery Sought Is Most Likely Not Available Through German
                  Procedures. ............................................................................. 12

            2.    The Second and Third Discretionary Factors Favor Granting the Petition
                  Because There Is No Indication That the German Court Would Reject the
                  Subpoenaed Evidence. ............................................................. 14

            3.    The Fourth Discretionary Factor Favors Granting the Petition Because the
                  Discovery Sought Is Relevant and Narrowly Tailored. ............................ 16

III.  CONCLUSION ....................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of Eurasian Bank Joint Stock Co.*,
No. 3:15-MC-106-L-BN, 2015 WL 6438256 (N.D. Tex. Oct. 21, 2015) ....................9, 10, 14

*Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*,
613 F. App'x 319 (5th Cir.2015) ......................................................................................10, 18

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019)....................................................................................................11

*Double Eagle Energy Servs., LLC v. MarkWest Utica EMG*,
LLC, No. 1:18-CV-00573, 2019 WL 847952 (W.D. La. Jan. 30, 2019)................................11

*Euromepa, S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995)....................................................................................................15

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
633 F.3d 591 (7th Cir. 2011) ............................................................................................13, 14

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
No. 19-MC-80277-TSH, 2020 WL 906719 (N.D. Cal. Feb. 25, 2020)...................................11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)........................................................................................................ *passim*

*Kang v. Nova Vision, Inc.*,
No. 06-21575-CIV-MORENO, 2007 WL 1879158 (S.D. Fla. June 26, 2007) ...............14, 15

*Kulzer v. Esschem, Inc.*,
390 F. App'x 88 (3d Cir. 2010) ..............................................................................................15

*LEG Q LLC v. RSR Corp.*,
No. 3:17-CV-1559-N-BN, 2017 WL 3780213 (N.D. Tex. Aug. 31, 2017) .................... *passim*

*In re Metallgesellschaft AG*,
121 F.3d 77 (2d Cir. 1997)......................................................................................................13

*Palantir Techs., Inc. v. Abramowitz*,
415 F. Supp. 3d 907 (N.D. Cal. 2019) ..............................................................................12, 16

**Statutes and Other Authorities**

28 U.S.C. § 1782............................................................................................................... *passim*

Fed. R. Civ. P. 45 ................................................................................................................9

Fed. R. Civ. P. 26 ..............................................................................................................16

Fed. R. Civ. P. 34 ..............................................................................................................14

Petitioner Thales DIS AIS Deutschland GmbH ("Thales") respectfully submits this memorandum of law in support of its petition pursuant to 28 U.S.C. § 1782 for an order authorizing Thales to serve the attached subpoena *duces tecum* on respondent Avanci LLC to obtain evidence for use in commercial litigation currently pending in Germany.[1]

## PRELIMINARY STATEMENT

This petition arises out of an action that Thales has brought against the target of the requested subpoena, Avanci LLC ("Avanci"), and one of its members, Nokia Technologies Oy (together with its parents and affiliates, "Nokia"), in Munich Regional Court for violation of European antitrust law.[2]  Avanci licenses portfolios of patents that its members have declared to be essential to the 2G, 3G, and 4G telecommunications standards set by the European Telecommunications Standards Institute, or "ETSI."  Such patents are referred to as "standards-essential patents."  Thales manufactures Network Access Device modules, or "NAD" modules, that are certified to comply with ETSI standards.[3]  Thales's NAD modules are ultimately incorporated into automobiles and other products to facilitate "Internet of Things" capability.

ETSI's members include numerous companies that compete in the telecommunications industry, including Nokia and many of Avanci's other members.  ETSI's work deciding which technologies will be included in, and excluded from, telecommunications standards therefore implicates European antitrust law's prohibition on "agreements . . . which limit or control . . . technical development," as well as the prohibition on abusing a dominant position in the market.

---

[1] The proposed subpoena is attached as Ex. A to the declaration of Jarod Taylor ("Taylor Decl.").

[2] Thales is simultaneously filing a petition to take discovery on Nokia Technologies Oy's U.S. affiliate, Nokia of America Corporation, and Thales respectfully requests that the petition against Nokia be considered with this petition.

[3] Thales does not concede that any specific patents owned by Nokia or other Avanci members are actually essential to any standard, are infringed by Thales's products, or are valid.

Collective standard-setting creates a risk that participants will be able to extract supracompetitive royalty rates based not on the value of the patented technology in a free market, but based on their agreement to exclude competing technology from the relevant standards. The European Commission's Horizontal Agreements Guidelines address this risk by requiring participants to license any standards-essential patent to any willing party on Fair, Reasonable, and Non-Discriminatory, or "FRAND," terms.

Thales alleges that Avanci and its members have violated those rules by collectively refusing to license Thales and other upstream component manufacturers. Avanci's policy of licensing only downstream automobile manufacturers allows it to impose supra-FRAND rates for two reasons. First, downstream manufacturers are not in a position to determine the extent to which any component actually practices specific patents; whether those patents are valid or previously licensed; or the extent to which the patents themselves, as opposed to technology developed by the component manufacturers, contribute to the value of the product. Second, downstream manufacturers have less incentive to ensure that they pay only a fair and reasonable rate for any valid standards-essential patents actually at issue, because it is standard in the industry for component manufacturers to agree to indemnify them for any patent claims. Against that backdrop, Avanci and its members unlawfully coordinate patent enforcement litigation against automobile manufacturers, inducing them to pay whatever Avanci or its members ask.

These issues are of tremendous global importance, not only for Thales, but for the entire industry. Avanci's actions not only extract supracompetitive royalty rates, but they also inhibit module makers' ability to research and develop new technology that complies with the relevant standards, and to sell products to any customers other than those that have concluded licenses with Avanci and its members. On July 1, 2021, Thales therefore brought an action in Munich

2

Regional Court against Avanci and Nokia to remedy these violations of European antitrust law. Thales seeks to subpoena Avanci for nine categories of documents that are narrowly tailored to the claims in that action. This petition meets all of the statutory requirements of Section 1782: (i) Thales is an "interested person" because it is the claimant in the foreign proceeding, (ii) the proceeding is before a foreign tribunal, and (iii) Avanci is "found in" this district because its principal place of business is in this district.

Each discretionary factor similarly favors granting this petition. First, even though Avanci is a party to the foreign proceeding, Thales most likely cannot obtain the categories of documents it seeks through German legal procedures. Second, German courts are receptive to evidence obtained through Section 1782, and numerous courts have accordingly granted petitions to take discovery for German proceedings. Third, and relatedly, this petition does not conceal an attempt to circumvent German proof-gathering restrictions, because German law does not prohibit the collection or use of evidence through Section 1782 or similar procedures. Finally, the requests are not unduly intrusive or burdensome. Each is instead narrowly tailored to specific allegations in the German complaint. Thales therefore respectfully requests that the Court grant permission to serve the attached subpoena on Avanci.

I.    **FACTUAL BACKGROUND**

    A.    **The Parties**

***Thales.*** Petitioner Thales is a company incorporated under the laws of Germany that specializes in manufacturing sensors, communications and satellite systems, and digital security solutions for both civil and military applications. It is a member of the Thales Group, headquartered in France. Among other things, Thales manufactures NAD modules for incorporation into automobiles. NAD modules are used for a variety of wireless communications applications, such as smartphone and GPS connectivity, and Thales's NAD

modules enable numerous connected applications collectively referred to as the "Internet of Things."[4]  Thales does not sell its products directly to automobile manufacturers, but instead sells them to component manufacturers that incorporate Thales's NAD modules into "telematics control units."[5]

Thales operated under the name Gemalto M2M GmBH ("Gemalto") until January 2020, shortly after the Gemalto Group was acquired by the Thales Group in April 2019.[6]  Gemalto originally operated under the name Cinterion Wireless Modules GmbH ("Cinterion"), which was a division of Siemens AG ("Siemens") until it was spun off and subsequently acquired by the Gemalto Group.[7]

*Avanci*.  Proposed subpoena recipient Avanci is a limited liability company organized under the laws of Delaware and headquartered in Dallas, Texas.[8]  Avanci is a licensing platform founded in 2016 to provide a "one-stop shop" for the licensing of complementary patents declared essential to 2G, 3G, and 4G network standards in automobiles and smart meters.[9]  Avanci's members include telecommunications giants like Nokia, Ericsson, InterDigital, Qualcomm, and many more, and they own nearly 70% of the patents that have been declared

---

[4] *See generally* Taylor Decl. at ¶ 6 & Ex. C (English translation of German Complaint (hereinafter "Compl.")) at ¶¶ 5-6.

[5] *See* Compl. at ¶ 7.

[6] *Id.* at ¶ 9.

[7] *Id.*

[8] Taylor Decl. at ¶ 7 and Ex. D at ¶ 2 (declaration of Luke McLeroy filed in *Continental Auto. Sys., Inc. v. Avanci, LLC, et al.*, 5:19-cv-02520-LHK).

[9] Taylor Decl. at ¶ 8 and Ex. E ("Avanci Launches One-Stop Licensing Platform to Accelerate Wireless Connectivity for the Internet of Things," *available at* https://www.avanci.com/2016/09/14/avanci-launches-one-stop-licensing-platform-accelerate-wireless-connectivity-internet-things/ (last accessed Sept. 22, 2021)).

essential to 2G, 3G, and 4G network standards.[10]  Avanci negotiates licenses on its members'

behalf pursuant to, among other things, a Master License Management Agreement between

Avanci and its licensors.[11]

      **B.**      **Avanci and Nokia Refuse to Offer a FRAND License to Thales.**

In or around September of 2014, Core Wireless Licensing S.à r.l. ("Core", now known as

Conversant Wireless Licensing S.à r.l.), accused Gemalto of infringing patents relating to 2G,

3G, and 4G networks that Core had acquired from Nokia.[12]  Gemalto believed, however, that it

was licensed to those patents pursuant to a patent cross-license agreement between Nokia and

Siemens, the rights to which had been assigned to Gemalto.[13]  Gemalto did not possess a copy of

the agreement, and Siemens refused to provide a copy without Nokia's consent due to

confidentiality obligations, so Gemalto requested a copy from Nokia.[14]

Nokia and Gemalto drafted a nondisclosure agreement to facilitate disclosure of the

cross-license agreement in or around 2017[15], but Nokia ultimately refused to sign it[16].  Instead,

Nokia began contacting Gemalto's customers to request that they take licenses directly from

Nokia.[17]  Nokia further falsely stated in those letters that Gemalto was not a willing licensee.[18]

Gemalto responded by asking Nokia to stop contacting Gemalto's customers.  Gemalto believed

---

[10] Compl. at ¶ 17.

[11] *Id.* at ¶¶ 16 *et seq.*

[12] *Id.* at ¶ 27.

[13] *Id.* at ¶ 28.

[14] *Id.* at ¶ 32; Taylor Decl. at ¶ 9 & Ex. F (3/25/2015 letter from Gemalto to Nokia).

[15] Compl. at ¶¶ 35, 36; Taylor Decl. at ¶ 10 & Ex. G (nondisclosure agreement drafts dated 7/27/2017 and 8/1/2017).

[16] Compl. at ¶ 37.

[17] *See, e.g.*, *id.*; Taylor Decl. at ¶ 11 & Ex. H (2/22/2018, 8/7/2018, and 9/28/2018 letters from Nokia to Sagemcom Broadband SAS).

[18] Compl. at ¶ 39.

that it was licensed to the relevant patents, and its customers therefore did not require separate licenses due to the doctrine of patent exhaustion. Gemalto was also willing to take a license to the extent it was not already licensed, contrary to Nokia's claims.[19]

In the meantime, Nokia joined the Avanci platform in October 2018[20], and Gemalto was acquired by Thales in April 2019. After joining Avanci, Nokia became even more adversarial. Throughout 2019, Nokia began commencing patent litigation seeking injunctions against automobile manufacturers like Daimler, based on their incorporation of Thales products that adhere to 2G, 3G, and/or 4G standards.[21] Thales alleges that this was part of a concerted strategy to pressure downstream manufacturers to take licenses from Avanci and its members, and other Avanci members brought similar litigation throughout 2019 and 2020.[22] That collective strategy is furthered by provisions in the Avanci Master License Management Agreement under which Avanci reimburses its members for patent litigation costs.[23]

Thales contacted Avanci in December 2019 to clarify its status under the cross-license agreement between Nokia and Siemens. But it also expressly requested a FRAND offer to the extent it was not already licensed. Avanci, however, provided neither the requested clarification nor a FRAND offer.[24] On October 8, 2020, Thales reached out directly to Nokia as well, again requesting both a copy of the cross-license agreement between Nokia and Siemens and a

---

[19] *Id.* at ¶ 40; Taylor Decl. at ¶ 12 & Ex. I (6/1/2018 letter from counsel to Gemalto to Nokia).

[20] Taylor Decl. at ¶ 13 & Ex. J ("Nokia Joins the Avanci Licensing Platform," *available at* https://www.avanci.com/2018/10/25/nokia-joins-avanci-licensing-platform/ (last accessed Sept. 22, 2021)).

[21] *See, e.g.*, Compl. at ¶ 169.

[22] *Id.* at ¶¶ 164-70.

[23] *Id.* at ¶¶ 24, 166; Taylor Decl. at ¶ 14 & Ex. K (Master License Management Agreement between Avanci; Qualcomm, Inc.; and Telefonaktiebolaget L.M. Ericsson dated July 21, 2016).

[24] Compl. at ¶ 50.

FRAND offer.[25]  Nokia responded by denying that Thales was already licensed, and did not offer a license.[26]  In February 2021, Siemens finally provided a copy of its cross-license agreement with Nokia, which gave Thales, as Siemens' successor, the right to negotiate a license for the relevant patents with Nokia in good faith.

While unlawful under European law, Avanci's and Nokia's refusal to offer Thales FRAND terms is perhaps not surprising.  Avanci has an express, public policy of licensing only original equipment manufacturers, or "OEMs"; that is, manufacturers that incorporate components into final products.[27]  Indeed, the Master License Management Agreement between Avanci and its licensors stipulates that Avanci will license only OEMs.[28]  Key Avanci licensors Ericsson and InterDigital similarly refused to open license negotiations with Thales until only recently, after Thales explicitly complained that they were improperly coordinating through Avanci.  But even now, they have not clearly offered FRAND terms to Thales, nor have they provided the terms and conditions for any potential license.[29]

Thales alleges that Avanci refuses to license upstream manufacturers because it can extract higher royalties from OEMs at Thales's expense.  OEMs have no ability to determine precisely the value added by Thales to the technology claimed by the patents themselves, which SEPs are used, whether the claimed SEPs are valid, or whether the rate offered is truly FRAND.  Furthermore, they have less incentive to do so.  That is because Thales has agreed to indemnify

---

[25] *Id.* at ¶ 42; Taylor Decl. at ¶ 15 & Ex. L (10/8/2020 letter from Thales to Nokia).

[26] Compl. at ¶ 43; Taylor Decl. at ¶ 16 & Ex. M (11/30/2020 email from Nokia to Thales).

[27] Compl. at ¶ 19; https://www.avanci.com/marketplace/#li-licensees (list of Avanci licensees) (last accessed September 22, 2021).

[28] *See, e.g.*, Compl. at ¶¶ 20, 50; Taylor Decl. at ¶ 14 & Ex. K (Master License Management Agreement between Avanci LLC, Qualcomm, Inc. and Telefonaktiebolaget L.M. Ericsson).

[29] Compl. at ¶ 174.

its customers for any patent claims—as Avanci and its licensors know, because that is standard industry practice.[30]  When paired with the threat of claims for injunctive relief coordinated among Avanci and its licensors, the OEMs in fact have every incentive to agree to whatever Avanci and its licensors demand.[31]

### C.  Thales Has Brought an Action in Munich Regional Court for Violations of European Antitrust Law.

On July 1, 2021, Thales brought an action against Nokia and Avanci in Munich Regional Court to remedy those violations.  Specifically, Thales alleges that Nokia, among other things:

- Violated Article 101 of the Treaty on the Functioning of the European Union ("TFEU")[32] and related German law by refusing to offer FRAND terms to Thales;

- Violated Article 101 of the TFEU and related German law by agreeing to Avanci's policy of licensing OEMs exclusively; and

- Violated Article 102 of the TFEU and related German law by abusing the market-dominant position created by holding standards-essential patents when it refused to enter into negotiations for a FRAND license.[33]

Similarly, Thales alleges that Avanci, among other things, violated Article 101 and Article 102[34] of the TFEU and related German law by:

---

[30] *See, e.g.*, *id.* at ¶¶ 58, 122.

[31] *Id.* at ¶¶ 119-122.

[32] Article 101 of the TFEU provides:

> The following shall be seen as incompatible with the internal market: all agreements between undertakings, decisions by associations of undertakings and concerted practices which may affect trade between Member States and which have as their object or effect the prevention, restriction or distortion of competition within the internal market, and in particular those which:
>
> . . .
> (b) limit or control production, markets, technical development, or investment;
> . . .
> (d) apply dissimilar conditions to equivalent transactions with other trading parties, thereby placing them at a competitive disadvantage;
> . . . .

[33] Compl. at ¶¶ 99 *et seq.* (discussing European and German precedent).

- Refusing to license all willing licensees, including Thales;

- Coordinating its members to seek injunctive relief against OEMs to induce them take supra-FRAND royalty rates; and

- Organizing and implementing the anticompetitive strategies outlined above among its licensors, including Nokia, Ericsson, and InterDigital.[35]

## II.    ARGUMENT

### A.  *Legal Framework*

Section 1782 of Title 28 of the United States Code permits district courts to authorize discovery for use in a foreign proceeding.  "It is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*," because the respondent "will have the opportunity to move to quash or modify the subpoenas under Federal Rule of Civil Procedure 45."  *In re Application of Eurasian Bank Joint Stock Co. for Expedited Jud. Assistance Pursuant to 28 U.S.C. § 1782*, No. 3:15-MC-106-L-BN, 2015 WL 6438256, at *2 (N.D. Tex. Oct. 21, 2015) (internal citations and quotation marks omitted).

In relevant part, Section 1782 states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . .  The order may be made . . . upon the application of any interested person.

---

[34] Article 102 of the TFEU provides:

Any abuse by one or more undertakings of a dominant position within the internal market or in a substantial part of it shall be prohibited as incompatible with the internal market in so far as it may affect trade between Member States."

Such abuse may, in particular, consist in:

. . .
(b) limiting production, markets or technical development to the prejudice of consumers;
(c) applying dissimilar conditions to equivalent transactions with other trading parties, thereby placing them at a competitive disadvantage;
. . . .

[35] Compl. at ¶¶ 156 *et seq.*

"Three statutory requirements must be satisfied before a district court may grant assistance under § 1782(a): (1) the person from whom discovery is sought must reside or be found in the district in which the application is filed; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or any interested person." *In re Application of Eurasian Bank Joint Stock Co.*, 2015 WL 6438256, at *2 (quoting *Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*, 613 F. App'x 319, 322 (5th Cir.2015)) (internal quotation marks omitted).

Once the statutory requirements are met, courts must examine four discretionary factors: "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, because nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach and therefore their evidence may be unobtainable absent § 1782(a) aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the § 1782(a) request is unduly intrusive or burdensome." *Id.* (quoting factors listed in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)) (internal quotation marks omitted). The bounds of the district court's discretion are "informed by the twin aims of the statute, which are to provide efficient means of assistance [in our federal courts] to participants in international litigation . . . and to encourage foreign countries by example to provide similar means of assistance to our courts." *Bravo Express*, 613 F. App'x at 321-22.

Here, Thales's statutory eligibility is incontrovertible, and each discretionary factor weighs in favor of granting the petition.

10

**B.      Thales's Petition Satisfies the Statutory Requirements of Section 1782.**

This petition meets each of the three statutory requirements:  Avanci's principal place of business is in the Northern District of Texas, the requested documents are for use in German litigation, and Thales is the claimant in that proceeding.

Avanci is "found in" the Northern District of Texas because its principal place of business is here.  *See, e.g.*, *HRC-Hainan Holding Co., LLC v. Yihan Hu*, No. 19-MC-80277-TSH, 2020 WL 906719, at *4 (N.D. Cal. Feb. 25, 2020) ("A business entity is 'found' in the judicial district where it has its principal place of business.") (discussing LLCs and citing cases). *See also In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (". . . § 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process."); *Double Eagle Energy Servs., LLC v. MarkWest Utica EMG*, LLC, No. 1:18-CV-00573, 2019 WL 847952, at *4 (W.D. La. Jan. 30, 2019) ("To determine whether the LLC is 'at home' in the forum state, the courts look to the principal place of business."), *vacated and remanded on other grounds*, 936 F.3d 260 (5th Cir. 2019).

Thales, as the claimant in civil litigation in a German court, is also an "interested person" in a "foreign proceeding."  *See, e.g.*, *Intel Corp.*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782.").  Thales is therefore statutorily eligible to subpoena Avanci for documents for use in that litigation.

**C.      The Discretionary Factors Favor Granting the Petition.**

Once the Court has determined that the statutory requirements of Section 1782 are met, it must consider the four discretionary factors set forth in the Supreme Court's *Intel* decision.  Each of those factors weighs in favor of granting Thales's petition:

- First, although Avanci is a party to the German litigation, Thales most likely cannot obtain the categories of documents it seeks through German procedures, and Thales therefore has a "need for § 1782 aid." *Intel*, 452 U.S. at 264.

- Second, multiple courts have found that German courts are receptive to evidence obtained under Section 1782.

- Third, Thales is represented in both Germany and the United States by reputable counsel, and its petition is a good faith attempt to obtain relevant discovery, not an attempt to circumvent German prohibitions on gathering evidence.

- Fourth, the requested subpoena is narrowly tailored to specific, key allegations in the German complaint.

   1.   *The First Discretionary Factor Favors Granting the Petition Because the Discovery Sought Is Most Likely Not Available Through German Procedures.*

In *Intel*, the Supreme Court noted that "the need for § 1782 aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." 542 U.S. at 264. But "[t]here is . . . no rule that 1782 applications can only be granted where the party from whom discovery is sought is not a party to the foreign proceeding." *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 912 (N.D. Cal. 2019). Where the foreign tribunal cannot order even parties to produce the requested evidence, this factor weighs in *favor* of a grant regardless of whether the subpoena target is a party. *See, e.g.*, *id.* at 917 (granting application to serve subpoena against party to German litigation). As the Supreme Court explained, the crux of the issue is whether the evidence sought is "unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Such is the case here.

Nor is there any rule requiring an interested person to try and fail to obtain the discovery through the foreign proceeding before seeking discovery under Section 1782. "Section 1782 does not require [an applicant] to seek discovery in the foreign jurisdiction before seeking the assistance of a district court." *LEG Q LLC v. RSR Corp.*, No. 3:17-CV-1559-N-BN, 2017

WL 3780213, at *8 (N.D. Tex. Aug. 31, 2017) (internal quotation marks omitted); *see also In re*

*Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] district court may not refuse a

request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the

opportunity to consider the discovery request.  Such a 'quasi-exhaustion requirement,' finds no

support in the plain language of the statute and runs counter to its express purposes . . . ."

(internal citation omitted)).

      Here, the categories of documents Thales seeks most likely cannot be obtained through

the German proceedings.  In general, German courts will only request the production of

documents that are specifically identified, not categories of documents that are relevant to topics

at issue in the litigation.[36]  *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 596 (7th

Cir. 2011) ("A party to a German lawsuit cannot demand categories of documents from his

opponent.  All he can demand are documents that he is able to identify specifically—

individually, not by category.")  As would be expected, Thales has no way of knowing what

communications or other specific documents might exist that relate to, for example, "Avanci's

. . . individual Licensors' policies . . . regarding whether to offer . . . license agreements . . . to

non-Original Equipment Manufacturers."[37]  *Finding* those documents is one of the purposes of

discovery.

      While new rules specific to the antitrust context enacted in 2017 provide for somewhat

broader discovery, they still will most likely not allow for the type of discovery that Thales seeks

here.  The rules are new and there are relatively few judicial decisions interpreting them, but

there is no indication that they would enable a party to demand categories of documents relating

---

[36] Decl. of Dr. Markus ("Wirtz Decl.") at ¶ 11 *et seq.*

[37] Taylor Decl. at ¶ 4 & Ex. A, Request No. 1.

13

to certain topics, as permitted under Federal Rules of Procedure 26 and 34, and thus under Section 1782.[38]  *See LEG Q LLC*, 2017 WL 3780213, at *11 (Federal Rules of Civil Procedure apply to requests under Section 1782).  Similarly, the regional court of Stuttgart has noted that the requesting party still has the burden of justifying its request by explaining not merely how a category of documents is relevant, as required under the Federal Rules, but how the documents are necessary to establish a specific fact in support of a legal claim.[39]  Furthermore, it is not certain that German courts have jurisdiction to order the production of documents held outside of Germany, even by a party.[40]

Because Thales has demonstrated its "need for § 1782(a) aid," *Intel*, 542 U.S. at 244, the first discretionary factor weighs in its favor.  *See Heraeus Kulzer,* 633 F.3d at 597 (reversing denial of Section 1782 application because German litigant could not "obtain even remotely comparable discovery by utilizing German procedures").

> 2. *The Second and Third Discretionary Factors Favor Granting the Petition Because There Is No Indication That the German Court Would Reject the Subpoenaed Evidence.*

That a tribunal will not itself *compel* the production of evidence, however, does not mean that it is not *receptive* to evidence obtained through U.S. procedures.  *See, e.g.*, *Kang v. Nova Vision, Inc.*, No. 06-21575-CIV-MORENO, 2007 WL 1879158, at *2 (S.D. Fla. June 26, 2007) ("[T]he availability of discovery in the foreign forum is not relevant for the determination of whether discovery is available under § 1782.").  Courts generally require affirmative proof that the foreign tribunal would *reject* the subpoenaed evidence before denying an application on this basis, even in *ex parte* proceedings.  *See, e.g.*, *In re Application of Eurasian Bank Joint Stock*

---

[38] Wirtz Decl. at ¶ 17.

[39] *Id.* at ¶ 16.

[40] *Id.* at ¶ 19.

*Co.*, 2015 WL 6438256, at *3 (in *ex parte* proceeding, noting "absence of authoritative proof that a foreign tribunal would reject evidence"); *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995) ("Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance.").  Because there is no such proof here, the second discretionary factor—the receptivity of the foreign tribunal to the requested evidence—weighs in Thales's favor.

The declaration of Dr. Markus Wirtz in support of Thales's petition provides evidence that the German court is likely to be receptive to the evidence sought, not to reject it.[41]  Dr. Wirtz's declaration is consistent with numerous decisions that have found that German courts are receptive to evidence obtained under Section 1782.  *See, e.g.*, *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 93 (3d Cir. 2010); *Kang*, 2007 WL 1879158, at *2 ("[T]here exists a substantial amount of case law where courts have found that German commercial courts are an appropriate forum for § 1782 assistance . . . .").

Those same facts show that this petition does not "conceal[] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or of the United States," the third discretionary factor.  *Intel*, 542 U.S. at 265.  "[P]roof-gathering restrictions are best understood as rules akin to privileges that prohibit the acquisition or use of certain materials, rather than as rules that fail to facilitate investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information."  *LEG Q LLC*, 2017 WL 3780213, at *10 (quoting *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015)) (internal quotation marks omitted) (alteration in original).  German courts do not "prohibit the acquisition

---

[41] Wirtz Decl. at ¶ 20 *et seq.*

or use" of the materials sought here; as described above, they are instead receptive to it.  These factors therefore weigh in favor of granting Thales's petition.

### 3. The Fourth Discretionary Factor Favors Granting the Petition Because the Discovery Sought Is Relevant and Narrowly Tailored.

The final discretionary factor is "whether the § 1782(a) request is unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.  This court has held that "[t]he intrusiveness and burden of Section 1782 disclosure are evaluated under the same standards that typically govern discovery requests under the Federal Rules of Civil Procedure."  *LEG Q LLC*, 2017 WL 3780213, at *11 (citing *Mees*, 793 F.3d at 302 ("a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure")) (internal quotation marks omitted) (alteration in original).  Thales's proposed subpoena falls well within the bounds of typical third-party discovery—and even more so within the bounds of typical party discovery. Numerous courts have granted applications for discovery of similar scope.  *See, e.g.*, *id.* at *3-*4 (12 categories of documents and depositions, such as "[a]ll documents . . . concerning . . . the Board of Directors" and "[d]ocuments related to . . . each director's financial interests," for use in English derivative shareholder litigation (internal quotation marks omitted)); *Palantir Techs., Inc.*, 415 F. Supp. 3d at 909-10 (9 categories of documents, including, e.g., "any communication between [Defendant], on the one hand, and [Plaintiff], or any director, officer, or employee of [Plaintiff], on the other, concerning the technology described in the Challenged Patents").

Thales's requests are narrowly tailored and relevant to the German litigation.  Each request can be tied directly to an allegation in the German complaint, as shown in the table below:

16

| No. | Request | Representative Allegation in the Complaint |
|---|---|---|
| 1 | Documents relating to whether to license standards-essential patents, including policy to license only OEMs | Paras. 2-3, 19-23, 49-50, 58-60, 85-89, 96-97, 116 (discussing anticompetitive policy of limiting license offers to OEMs) |
| 2 | Documents relating to indemnification obligations between OEMs and upstream suppliers | Paras. 58-63, 122-23 (discussing Avanci's knowledge of indemnification obligations as rationale for and part of enforcement strategy) |
| 3 | Most recent Avanci Master License Management Agreements | Paras. 20-24, 165-68 (discussing provisions limiting licensing to OEMs and reimbursement patent litigation costs) |
| 4 | Documents relating to communications with Thales's OEM customers regarding licensing standards-essential patents | Paras. 38-40 (discussing communications with OEMs) |
| 5 | Communications among Avanci members relating to injunction actions and their impact on commercial conditions and terms | Paras. 24, 164-73, 176 (discussing strategy of harassing litigation against downstream manufacturers) |
| 6 | Documents relating to Thales's rights under the Nokia-Siemens agreement | Paras. 28, 34-39, 47-49, 125 (discussing rights under Nokia-Siemens cross-license agreement) |
| 7 | Documents relating to Avanci's and its members' methodologies for calculating royalties on standards-essential patents | Paras. 60, 62, 89 (discussing calculation of royalty rates) |
| 8 | The percentage of standards-essential patents pooled in the Avanci platform | Paras. 17, 104, 151-52 (discussing market power conferred by high percentage of standards-essential patents held) |
| 9 | Communications relating to Thales's allegations | *Passim* |

The relevance of these requests is explained in further detail in paragraph 23 of the declaration of

Dr. Wirtz.  As a party to the German litigation, Avanci will undoubtedly be looking at many of

these same documents in the ordinary course of that litigation, regardless of the outcome of this petition. These requests are therefore not a material additional burden.

Thales acknowledges its responsibility to bring appropriately tailored requests to this Court—and Thales believes it has done so—but to the extent the Court has any concerns about the relevance, breadth, or burden of these requests, those concerns are addressed most appropriately through proceedings *after* the subpoena is served, rather than by denying the petition. As this court has explained:

> [A]ll of these concerns—including the breadth of topics in the deposition subpoenas—can properly be addressed through the mechanisms, including objections and motions, specifically provided by Rule 45. Respondents will not be precluded from challenging the subpoenas, once issued, under any applicable local rules and the Federal Rules of Civil Procedure, including as being unduly burdensome, irrelevant, or overly broad.

*LEG Q, LLC*, 2017 WL 3780213, at *13 (citing cases). The parties will also be required to meet and confer before commencing any motion practice, further enhancing the benefits of this course of action. Avanci will be able to raise any burden concerns in a particularized manner at that time, and Thales can then further tailor its requests, if necessary and as appropriate. Any dispute that ultimately reaches the Court would then be concrete and based on specific information about the volume of information actually called for by these requests.

This Court should therefore find that the final discretionary factor weighs in favor of Thales and grant its petition for discovery.

## III.    <u>CONCLUSION</u>

Avanci possesses information in the United States that is materially relevant to Thales's action in Germany. The statute's aim to "provide efficient means of assistance to participants in international litigation," *Bravo Express*, 613 F. App'x at 321-22, is particularly implicated here, given the global importance of the issues raised in the German litigation. This petition meets all

of the statutory requirements, and each discretionary factor weighs in favor of granting the petition.  Thales therefore respectfully requests that the Court (a) grant its *ex parte* petition for an order permitting discovery, (b) authorize Thales to serve the subpoena in the form of Exhibit A to the declaration of Jarod Taylor pursuant to 28 U.S.C. § 1782, and (c) enter the proposed order filed with this petition.

Dated:  September 30, 2021

Respectfully submitted,

SCHEEF & STONE, LLP

*/s/ Michael C. Smith*
Michael C. Smith
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Telephone: (903) 930-5514
Email: michael.smith@solidcounsel.com
Texas Bar No. 18650410

AXINN, VELTROP & HARKRIDER LLP

Michael L. Keeley
1901 L Street NW
Washington, DC  20036
Telephone: (202) 912-4700
Email: mkeeley@axinn.com

Jarod G. Taylor
90 State House Square
Hartford, CT  06103
Telephone: (860) 275-8100
Email: jtaylor@axinn.com

*Counsel for Petitioner Thales DIS AIS Deutschland GmbH*